Arthur W. STURGEON, Plaintiff,

Aetna Casualty and Surety
Company, Intervenor,

v.

STRACHAN SHIPPING COMPANY,
Defendant-Third-Party
Plaintiff-Appellee,

v.

BANKERS AND SHIPPERS INSURANCE COMPANY OF NEW YORK,
Third-Party Defendant-Appellant.

No. 82–3229.

United States Court of Appeals,
Fifth Circuit.

Dec. 12, 1983.

Tooley, Waldmann & Weidner, John F. Tooley, Jr., Gretna, La., for third-party defendant-appellant.

Hailey, McNamara, McNamara & Hall, Laurence E. Larmann, Metairie, La., for defendant-third-party plaintiff-appellee.

Before GEE, RANDALL and TATE, Circuit Judges.

PER CURIAM:

CERTIFICATE FROM THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT TO THE SUPREME COURT OF LOUISIANA PURSUANT TO RULE 12, LOUISIANA SUPREME COURT RULES

TO THE SUPREME COURT OF LOUISIANA AND THE HONORABLE JUSTICES THEREOF:

## I. STYLE OF THE CASE

The style of the case in which this certificate is made is *Arthur W. Sturgeon,* Plaintiff, versus *Strachan Shipping Company,* Defendant and Third-Party Plaintiff-Appellee, versus *Bankers and Shippers Insurance Company of New York,* Third-Party Defendant-Appellant, versus *American Mutual Liability Insurance Company,* Third-Party Defendant-Appellee, Case No. 82–3229, United States Court of Appeals for the Fifth Circuit, on appeal from the United States District Court for the Eastern District of Louisiana.[1]

## II. QUESTIONS FOR THE SUPREME COURT OF LOUISIANA

It appears to the United States Court of Appeals for the Fifth Circuit that the above-styled diversity case in this Court involves questions or propositions of law particularly appropriate for resolution by the Supreme Court of Louisiana. No precedent in the decisions of the Supreme Court of Louisiana appears to be controlling.

Under these circumstances, the United States Court of Appeals for the Fifth Circuit hereby certifies the following questions of law to the Supreme Court of Louisiana for instructions based upon the facts recited, pursuant to La.Sup.Ct.R. 12:

A. Under the following facts, was Strachan Shipping Company a "borrower" of the tractor-trailer under the unloading process and entitled to coverage under the trucker's insurance policy?[2]

B. Was the tractor-trailer a "loaned" vehicle excluded from coverage under the Strachan Shipping Company's insurance policy?[3]

QUESTIONS CERTIFIED.

## III. STATEMENT OF THE FACTS

On March 4, 1979, Arthur W. Sturgeon was under contract as an owner-driver of a tractor-trailer for Pre-Fab Transit Company. Under that agreement he was paid 74% of the gross receipts of any load that he hauled. His rig was a standard flat bed tractor-trailer. On that date he delivered a load of baled cotton to the Robin Street Wharf under a bill of lading to Strachan Shipping Company. He had never been there before. He was directed by a security guard through one of the doors into the large covered wharf, and down a pathway between stowed cargo to where the cotton was to be unloaded.

The Strachan section of the Robin Street Wharf runs some 720 feet along the river. It is leased to Strachan by the City of New Orleans Dock Board. Arriving there, Sturgeon handed over his bills of lading to the Strachan clerk, parked his rig where directed in Strachan's unloading area, and as directed readied the rig's trailer for unloading by removing the tarpaulin and its fastenings. With this he was free to leave the area, since Strachan had complete control over the unloading process until it released the truck to Mr. Sturgeon. Strachan's employees and equipment performed all loading and unloading operations, which is true

1. An earlier opinion in the case, rendered by a panel of this Court, is reported at 698 F.2d 798 (1983), followed by an order granting en banc rehearing. Thereafter the Court en banc remanded the case to the panel for certification.

2. In pertinent part, the clause in question reads:

    ii. Persons Insured. Each of the following is an insured under this insurance to the extent set forth below.

    c. *Any other person* using an owned automobile or a hired automobile with the permission of the named insured provided his actual operation or (if he is not operating) his other actual use thereof is within the scope of such permission, but with respect of bodily injury or property damage arising out of the loading or unloading thereof, such other person shall be insured only if he is:

    1. A Lessee or a borrower of the automobile; or,

    2. An employee of the named insured or of such lessee or borrower.

3. In pertinent part, the clause in question reads:

    *Exclusion*

    This insurance does not apply:

    .     .     .     .     .

    (b) to bodily injury ... arising out of the ownership, maintenance, operation, use, loading or unloading of

    (1) any automobile ... loaned to any insured....

for most flat bed loads. Unquestionably Strachan employees directed the tractor-trailer driver to stop where it was convenient for them to unload on their premises; however, Strachan employees could not operate, move or otherwise have any connection with the truck itself.

The truck driver gave his papers to the Strachan foreman who came up to his truck and told him to get ready for unloading. The bales of cotton are covered and secured by tarpaulin, chains and tie-downs and are truck equipment. Drivers must remove the tarpaulin, chains and tie-downs before the unloading operation can begin. Strachan's employees used a forklift-type vehicle with "squeezer" blades that lifted the bales from the flatbed from the side. Plaintiff removed the chains and binders holding the load, rolled up the tarpaulin for storage, and began picking up numerous tie-downs on and around his truck, some of which had fallen to the floor. While he was leaning over, picking up the last few ties, after two Strachan employees had started to unload his trailer, a bale of cotton fell upon his back causing him serious injury.

The entire record in this case, together with copies of the briefs of the parties and agreed certification in this Court, are transmitted herewith.